UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **JULIAN CHAMPION** | * | **CIVIL ACTION NO. 16-1218**<br>Section P |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **SHERIFF'S DEPARTMENT OF BIENVILLE PARISH, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a motion for summary judgment [doc. # 28] filed by defendant, Deputy Rusty Poland a/k/a Ellis B. Poland. For reasons set forth below, it is recommended that the motion be GRANTED. It is further recommended that plaintiff's claims against Michael Crawford be dismissed, without prejudice.

### Background

On August 25, 2016, plaintiff pro se Julian Champion, who is proceeding in forma pauperis in this matter, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 against various law enforcement agencies and officers involved with his May 6, 2016, arrest. According to his complaint, as amended, Champion learned on May 6, 2016, that a warrant had been issued for his arrest on a charge of armed robbery. Accordingly, Champion set out that day to meet his grandfather, who was to accompany him to the Sheriffs' Department to "clear his name." Whilst en route to his grandfather's house, however, Champion encountered Bienville Parish Sheriff's deputies and a David Wade Man Search officer, who proceeded to shoot Champion in his right leg, below the knee. Fearing for his life, Champion fled from the officers

as they continued to discharge their weapons at him. Champion eventually came across additional officers and raised his hands to surrender, but nevertheless was tased twice.

Once Champion was secured, the officers did not take him to the hospital to treat his gunshot wound; rather, they took him to the Bienville Parish Courthouse where they interrogated him for the next three or so hours. Only after the interrogation was finished did a deputy finally escort Champion to the emergency room.

Plaintiff's complaint included claims for excessive force, racial profiling,[1] and torture stemming from defendants' refusal to provide him with prompt medical care. He named the following defendants: (1) Michael Crawford (spelled in his complaint as "Micheal Crawford"); (2) John Ballance, Sheriff of Bienville Parish; (3) Glenn Fallin, 2nd Judicial District Court Judge; (4) David Wade Man Search Task Force; (5) Unknown officers of the David Wade Man Search Task Force; (6) Bienville Parish Sheriff's Department; and (7) Rusty Poland. Plaintiff alleged that he suffered permanent injury because of loss of sensation to his shin. He seeks dismissal of the pending criminal charges against him, release from custody with permission to leave the state, and monetary damages for the violation of his rights.

On February 16, 2017, the undersigned recommended dismissal of plaintiff's claims against the Sheriff's Department of Bienville Parish, Sheriff's Department of Bienville Parish, Lt. Investigators, David Wade Man Search Task Force, John Ballance and Glen Fallin. (Feb. 16, 2017, R&R [doc. # 10]. The court concomitantly determined that plaintiff's complaint sufficiently pleaded a cause of action against remaining defendants, Michael Crawford and Rusty Poland, and therefore, ordered service as to them. (Feb. 16, 2017, Mem. Order [doc. # 11]). On

---

[1] Plaintiff has not advanced his asserted claim of racial profiling, or advanced any theory for relief on that basis. Accordingly, it is deemed abandoned.

April 24, 2017, the U.S. Marshal filed an executed return of service for Rusty Poland, but service for Michael Crawford was returned un-executed. [doc. #s 13-14].

On June 12, 2017, Poland filed a motion to dismiss for failure to state a claim upon which relief can be granted. On September 12, 2017, the undersigned recommended that the motion be denied. (Sept. 12, 2017, R&R [doc. # 20]). The court contemporaneously re-ordered defendant to provide plaintiff with a copy of all documents pertinent to the issues in the case that were in his possession. (Sept. 12, 2017, Order [doc. # 21]). The court further ordered that,

> within 14 days after service of the discovery documents from defendant, plaintiff may seek leave of court to amend his complaint to join other responsible parties and to allege what role Michael Crawford played in his constitutional deprivations. Within that same period, and if he intends to purse his claims against Crawford, plaintiff should provide the Clerk of Court with an updated agency affiliation and address for Crawford. Plaintiff is cautioned that if he fails to do so comply, then the court may dismiss his claims against Crawford for failure to prosecute, serve, and/or heed court order(s).

*Id*.

On September 22, 2017, defendant complied with the order to provide plaintiffs with all documents in his possession. *See* doc. #s 22 & 23.

On October 26, 2017, the District Court adopted the undersigned's report and recommendations and dismissed all defendants, save for Rusty Poland and Michael Crawford. [doc. #s 26 & 27].

On November 9, 2017, Poland filed the instant motion for summary judgment, invoking the defense of qualified immunity and seeking dismissal of plaintiff's claims against him. On November 20, 2017, plaintiff filed a response to the motion for summary judgment in which he discussed the actions of other officers whom he had not sought to add as defendants in this matter, and complained that he still did not know the name of the officer who shot him. [doc. # 31]. He also remarked that Rusty Poland directed an officer to transport him to the sheriff's

office for investigation, and that Poland interrogated him at the office. *Id.*

Poland did not file a reply brief, and the time to do so has lapsed. *See* Notice of Motion Setting [doc. # 30]. Thus, the matter is ripe.

## Standard of Review

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an

actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

### Relevant Facts[2]

1.

Deputy Poland had reason to believe that on May 6, 2016, Julian Champion was armed and dangerous. (Ellis B. "Rusty" Poland Affidavit, ¶34; Def. MSJ, Exh. A).

---

[2] The court's recitation of relevant facts generally tracks pertinent portions of defendant's Statement of Uncontested Facts. Of course, to the extent there is a material conflict in the evidence, the court necessarily credits plaintiff's version of events.

2.

On May 6, 2016, deputies involved in the search, other than Poland, as well as the Wade Correctional Center K9 Tracking Team, headed toward the area where Champion was last seen. *Id*.

3.

Poland stationed himself in his Sheriff's Department vehicle just north of downtown Gibsland on Highway 154. *Id*., at ¶35.

4.

Poland received a call from another Sheriff's Deputy stating that Julian Champion was in custody. *Id*., at ¶36.

5.

Poland was not at the scene when Champion was arrested, and he never discharged a firearm or a Tazer during the course of the search for Champion. *Id*.

6.

After learning that Champion was in custody, Poland drove to the location where Champion was with the officers who apprehended him. *Id*., at ¶37.

7.

The first time Poland saw Champion on May 6, 2016, he was sitting in the back of a Sheriff's Department pickup truck with a bandage on his leg. *Id*., at ¶38.

8.

Poland was told, after first seeing Champion, that Champion had received a "flesh wound" from a gunshot when he was fleeing law enforcement officers. *Id*.

9.

Champion told Poland that he wanted to speak with him at that time, but Poland told Champion that a conversation would have to wait until after he was treated. *Id*., at ¶ 39.

10.

Soon after Poland arrived where Champion was in custody, first responders from Pafford Emergency Medical Services ("Pafford EMS") arrived and provided medical attention to Champion. *Id*., at ¶40; *see also* Exh. B, Affidavit of Bet Loe ("Loe Aff."), ¶4, Exhibit B-1, Champion Records, pp. 80-84 ("Exhibit B-1, Champion Records").

11.

It was Poland's understanding that the first responders confirmed that Julian Champion had a flesh wound, cleaned and bandaged the minor wound, and released Champion. (Poland Aff., ¶40).

12.

Poland did not see any blood or blood soaking through the bandage on Champion's leg, and did not believe Champion appeared to be in any distress. *Id*., at ¶41.

13.

After Champion was treated by Pafford EMS personnel, he was transported to the Bienville Parish Sheriff's Office for an interview. *Id*., at ¶42.

14.

After Champion arrived at the Sheriff's Office, he was photographed and Poland sat down with Champion to conduct the interview. *Id*., at ¶43.

15.

During Poland's interview of Champion, he observed that Champion's leg was bandaged, but saw no blood on Champion's leg, and saw no blood soaking through the bandage on Champion's leg. *Id*.

16.

Poland did not believe Champion appeared to be in any distress during the course of the interview. *Id*.

17.

Poland advised Champion of his Miranda rights and Champion agreed to the interview

during which he denied any involvement in the attack on the victim. *Id.*, at ¶44.[3]

18.

After the conclusion of the interview, Sheriff's deputies transported Julian Champion to the Bienville Parish Medical Center. *Id.*, at ¶46.

19.

Pafford EMS described Champion's injury as a "superficial" wound, with the gunshot "graz[ing] his shin," and noted that Champion had "no bleeding." (Champion Records, pgs. 80-84; MSJ Exh. B-1).

20.

Once Champion was in the custody of the arresting officers, he received medical treatment from Pafford EMS personnel who cleaned the area on his right shin where the bullet grazed him, and bandaged the area with a piece of 4 x 4 gauze and kling. *Id.*

21.

After Julian Champion was treated and released by the EMS personnel, Poland had no reason to believe that he needed any urgent medical attention. (Poland Aff., ¶47).

22.

Poland was not aware that Champion had any medical condition that had not already been treated. *Id.*, at ¶48.

23.

Poland never refused medical care to Champion, nor ignored any request for treatment. *Id.*, at ¶49.

24.

According to Poland, he never intended to harm Champion harm, and never saw anyone else do so. *Id.*, at ¶50.

---

[3] According to the statement of rights form, however, Champion *declined* to answer questions without a lawyer present. (Pl. Resp., Exhs. [doc. # 31-1]).

## Analysis

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Id*. "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id*. (citation omitted).

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether plaintiff has alleged a violation of a constitutional right at all. *Id*. *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). Moreover, in order to plead a § 1983 cause of action, a plaintiff "must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Thus, a successful § 1983 claim "must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

Qualified immunity is nominally characterized as an affirmative defense. However, once raised by defendants, it devolves upon plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th

9

Cir.2008) (citation omitted).  Plaintiff's burden is two-pronged.  *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.  *Id*.  "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*. (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

In the peculiar context of a motion for summary judgment, "once [the court has] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of [an officer's] actions . . . is a pure question of law." *Scott*, 550 U.S. at 397, 127 S.Ct. at 1776 n.8 (2007).  Consequently, the Fifth Circuit has recognized that,

> when facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably, we can hold that an officer acted reasonably as a matter of law.  But when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences, our analysis is more tentative.  In these cases, we must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff.

*Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 411–12 (5th Cir.2009) (internal citation omitted).

In other words, there is no constitutional violation if – even after crediting the version of facts most favorable to plaintiff – the officer's conduct was objectively reasonable.  *Id*.

I.     **Excessive Force**

Plaintiff contends that he was subjected to excessive force when law enforcement officers shot and tased him. "All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . ." The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Of course, the protections of the Fourth Amendment extend to the states pursuant to the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207, 99 S.Ct. 2248, 2253-2254 (1979) (citation omitted).

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2405 (2007) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968) (internal quotation marks omitted).

Here, Deputy Poland has established that he was neither present, nor involved with the use of force that precipitated plaintiff's arrest. Moreover, plaintiff does not contest same. Accordingly, plaintiff does not have a cognizable excessive force claim against Poland.[4]

II.    **Delayed Medical Care**

As a pretrial detainee, plaintiff's constitutional rights flow from both the procedural and

---

[4] Having determined that plaintiff failed to establish a constitutional violation under the first prong of the qualified immunity analysis, the court need not reach the second step.

substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). Pretrial detainees are presumed innocent and not subject to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979). When, as here, a pretrial detainee brings a claim which is directed toward a particular incident, it is properly analyzed as an episodic act case, and a deliberate indifference standard is applied. *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir.1996). This standard is substantially equivalent to the Eighth Amendment protections available to a convicted prisoner. *Id.*[5]

Under the "episodic act" standard, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). Therefore, the plaintiff must show that he suffered a sufficiently serious deprivation and deliberate indifference by prison officials. *Hare*, 74 F.3d at 643 and 650. This is the same standard applicable to convicted prisoners whose claims are analyzed under the Eighth Amendment.

Rights guaranteed under the Eighth Amendment are violated only if the defendant acts with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendant have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendant must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

---

[5] "Claims based upon a jail official's 'episodic acts or omissions' are reviewed under the standard of subjective deliberate indifference enunciated in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L. Ed.2d 811 (1994)." *Haddix v. Kerss*, 203 Fed. Appx. 551, 553 (5th Cir.2006).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendant was deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that the state official "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted).

In support of his motion for summary judgment, Poland adduced evidence that when he first encountered plaintiff, he already was bandaged. Moreover, Poland was advised that plaintiff had a flesh wound. At no time did Poland see any blood escaping through the bandage. According to Poland, he had no reason to believe that Champion had an untreated medical condition.

Of course, after Champion was questioned at the jail, he was transported to the emergency room for further treatment. If Poland did not believe that Champion had an untreated medical condition, then why was he taken to the hospital after questioning?

On the other hand, hospital records indicate that Champion was shot around 14:00, arrived there at 16:40, and ambulated without difficulty. (BPSO, pg. 68 [doc. # 29]). The hospital characterized Champion's injury as a superficial wound to his right shin that extended into the fascial layer, with exposed muscle. (BPSO, pg. 61 [doc. # 29]).

Upon arrival at the hospital, Champion complained of mild burning sensation, with increased pain upon ambulation. *Id*. He underwent an x-ray, and received sutures. *Id*., at BPSO

13

65. He was discharged with a prescription for Motrin and Bactrim. *Id*. He was to follow-up for re-check in two days, with suture removal in eight to nine days. *Id*.

EMS noted that when they treated Champion at the scene of the shooting, he complained of pain that was a two on a ten point scale. *Id*., at BPSO 83. Moreover, they characterized the wound as superficial, with no bleeding. *Id*.

Given the uncontroverted evidence that Poland had been advised that Champion had suffered no more than a superficial wound that had been bandaged, and was not bleeding, the court cannot find that he was deliberately indifferent to a serious medical need of plaintiff. Plaintiff contends that because of his delay in treatment, he suffered loss of sensation to his shin. However, there is no evidence to establish a causal link between a two hour delay in treatment and his loss of sensation – or that Deputy Poland perceived that risk of harm, yet ignored it. Moreover, insofar as plaintiff contends that he was in pain and "tortured," as a result of the delayed transport to a medical facility, his allegation is belied by the unbiased medical records which confirm no more than a mild burning sensation by the time he arrived at the hospital.[6]

**III.     Official Capacity Claim**

To the extent that plaintiff intended to sue defendant in his official capacity, the court

---

[6] Indeed, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007). Furthermore, "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769; *see also Anderson,* 477 U.S. at 248 (summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party).

Having determined that plaintiff failed to establish a constitutional violation under the first prong of the qualified immunity analysis, the court need not reach the second step.

observes that official-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)). To impose § 1983 liability against a government entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity. *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)). "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

In the case *sub judice*, plaintiff has not established an underlying constitutional violation by defendant in his individual capacity. *A fortiori*, he has not identified a precipitating unconstitutional custom or policy enacted by the government entity. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (because the officers did not violate plaintiff's constitutional rights, neither did the city).

**IV.    Michael Crawford**

As recited earlier, on September 12, 2017, the court ordered plaintiff, *inter alia*, to provide the court with an updated agency affiliation and address for defendant, Michael Crawford, within 14 days after Poland served plaintiff with requisite discovery documents. (Sept. 12, 2017, Order [doc. # 21]). On September 22, 2017, Poland filed a notice stating that he had provided the documents to plaintiff. (Notice of Compliance [doc. # 23]). To date, however, plaintiff has failed to provide the court with updated agency or service information for Michael

Crawford.

In the absence of good cause, "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – *must dismiss* the action without prejudice against that defendant . . ." Fed.R.Civ.P. 4(m) (emphasis added). In the case *sub judice*, plaintiff neither provided any explanation for the lack of service, nor requested an extension of time to properly perfect service. Accordingly, good cause is lacking.[7]

The undersigned further observes that to the extent the applicable statute of limitations may bar plaintiff from re-filing the instant suit, then dismissal at this juncture effectively will constitute dismissal "with prejudice," – "an extreme sanction that deprives the litigant of the opportunity to pursue his claim." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1190 (5th Cir. 1992) (internal quotations omitted). Dismissal with prejudice for failure to prosecute or to comply with a court order is warranted only where "a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice." *See Millan v. USAA General Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008) (citations and internal quotation marks omitted). In addition, the Fifth Circuit generally requires the

---

[7] "To establish good cause, a litigant must demonstrate 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'" *Systems Signs Supplies v. U.S. Dept. of Justice, Washington, D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990). Moreover, "the claimant must make a showing of good faith and establish 'some reasonable basis for noncompliance within the time specified.'" *Id.* (quoting 4A C. Wright & A. Miller, Federal Practice and Procedure § 1165, at 480 (2d ed. 1987)).
While the court is cognizant of plaintiff's pro se status, "'the right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

presence of at least one of three aggravating factors: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Id*.

The undersigned finds that the requirements for a dismissal that is effectively *with prejudice* are satisfied in this case. As discussed above, plaintiff has ignored at least one court order. Further, because plaintiff is proceeding in forma pauperis in this matter, he likely does not enjoy the financial resources to fund an alternative monetary sanction.[8] Moreover, dismissal of the defendant may be the least sanction where, as here, plaintiff is not actively pursuing his cause of action. Finally, plaintiff's unrepentant flaunting of court orders[9] reflects his own contumaciouness or "stubborn resistance to authority"[10] which is personally attributable to him as a pro se litigant.

**V.     Other Un-Joined Officers**

In his response to defendant's motion for summary judgment, plaintiff complains of the actions of several other officers. On September 12, 2017, the court ordered plaintiff to seek leave of court to amend his complaint to join other responsible parties. *See* Sept. 12, 2017, Order. Plaintiff, however, never did so. At this point, any claim against new parties is likely time-barred.

---

[8] *See Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 78 n.2 (5th Cir. 2011) (noting that a court may consider a plaintiff's IFP status in determining that a monetary sanction would not be an appropriate and effective sanction).

[9] This report and recommendation itself provides plaintiff with further notice of his non-compliance.

[10] *See Millan, supra*.

17

Plaintiff also complains that the name of the David Wade corrections officer who shot him is being withheld. However, the court already ordered defendant, Poland, to provide plaintiff with all responsive documents in his possession. There is no indication that Poland withheld any information. Moreover, the court accorded the parties 90 days to conduct discovery. There is no suggestion that plaintiff availed himself of that opportunity. Further, at this point, any claim against an additional party is likely time-barred.

### Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 28] filed by defendant, Deputy Rusty Poland a/k/a Ellis B. Poland, be GRANTED, and that judgment be entered in favor of said defendant, dismissing with prejudice plaintiff's claims, in their entirety. Fed. R. Civ. P. 56.

IT IS FURTHER RECOMMENDED that plaintiff's claims against Michael Crawford (spelled in his complaint as "Micheal Crawford") be DISMISSED, without prejudice. Fed.R.Civ.P. 4(m); LR 41.3W.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 13th day of March 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE